USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/8/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

VANCE CAMPBELL, *as Executor of the Estate of Wallace Campbell*,

                       Plaintiff,

      -v-

MANUEL JULIO DE LA TORRE, *individually and as Administrator of The Estate of Manuel Jesus De La Torre and Sylvia De La Torre*,

                       Defendant,

      -and-

CANAIMA II, *a drawing*,

                       Defendant-in-rem.

------------------------------------------------------------------- X

25-cv-1468 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Vance Campbell, as Executor of the Estate of Wallace Campbell ("Plaintiff"), seeks a declaratory judgment against Manuel Julio De La Torre, individually and in his capacity as Administrator of the Estate of Manuel Jesus De La Torre ("Defendant"), and asserts *in rem* claims to declare Plaintiff's ownership rights and clear title to *Canaima II* (the "Drawing"), a 1947 oil drawing by Wifredo Lam. Dkt. No. 1. Defendant brings counterclaims for a declaratory judgment that Defendant is the true owner of the Drawing and for unjust enrichment. Dkt. No. 15. Plaintiff now moves pursuant to Federal Rule of Civil Procedure 12(c) for

judgment on the pleadings with regard to his claims for relief and moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendant's counterclaims. Dkt. No. 18.

For the following reasons, the motion for judgment on the pleadings is granted, and the motion to dismiss Defendant's counterclaims is granted.

## BACKGROUND

For both Plaintiff's motion for judgment on the pleadings under Rule 12(c) and Plaintiff's motion to dismiss Defendant's counterclaims under Rule 12(b)(6), the Court accepts as true the factual allegations in Defendant's answer and counterclaims, along with "any attached written instruments or other matters of which courts can take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021); *see id.* (stating that a court "should remain within the non-movant's pleading when deciding both Rule 12(c) and 12(b)(6) motions").

Defendant Manuel Julio De La Torre is an heir of Manuel Jesus De La Torre ("Manuel De La Torre") and Sylvia De La Torre and the Administrator of the De La Torre Estate. Dkt. No. 1 ¶ 5; Dkt. No. 15 ¶ 5. Manuel De La Torre was a prominent architect and professor of architecture at the University of Havana. Dkt. No. 15 ¶ 55. While living in Cuba from 1935 until 1960, Manuel De La Torre and his wife Sylvia De La Torre befriended local Cuban artists and purchased dozens of artworks. *Id.* ¶¶ 55–56. Their collection was exhibited in Havana, Cuba, in or about April 1956 at the Lyceum Exhibition. *Id.* ¶ 57. In 1960, the De La Torres were forced to flee due to political persecution during the Cuban Revolution. *Id.* ¶ 59. At that time, their entire collection was stolen from them. *Id.* ¶ 59. They sought refuge in the United States and resided in Nassau County, New York, until their passing. *Id.* ¶ 60. At some point after they moved to the United States, the De La Torres learned that the artworks belonging to them were trafficked out of Cuba and sold by prominent auction houses in the United States, including in New York. *Id.* ¶ 63.

One of the pieces of art collected by Manuel De La Torre and stolen from him when he fled Cuba was entitled "Composción" (the "Drawing"). *Id.* ¶ 53. The Drawing was created in 1947 by a well-known and admired Cuban artist named Wifredo Lam ("Lam"). *Id.* ¶ 56. Lam dedicated the Drawing to Manuel De La Torre, writing "para Manolo de la Torre, de su amigo el pintor, Wifredo Lam, 1947" on the front of the work ("For Manolo de la Torre, by his friend the painter, Wifredo Lam, 1947"). *Id.* ¶ 54 & n.1. Manuel and Sylvia De La Torre purchased the Drawing directly from the artist. *Id.* ¶ 56.

The De La Torre family has actively sought and made good faith efforts to recover over fifty stolen artworks that were exhibited at the Lyceum Exhibition, including the Drawing. *Id.* ¶ 67; Dkt. No. 1 ¶ 20; Dkt. No. 15 ¶ 20. In 2008, after litigation in New York State Supreme Court, they were able to recover one of these works, entitled "La Hamaca." Dkt. No. 15 ¶ 64. The press around that case resulted in the recovery of several other stolen artworks. *Id.* ¶ 65. The works that are still missing have been registered with the Art Loss Register since 2015. *Id.* ¶ 66.

In 2020, a Christie's employee advised Defendant that the Drawing had been consigned for sale to Christie's. *Id.* ¶¶ 68–69. Defendant contacted Christie's and demanded the return of the drawing from its purported owner, the Campbell Estate and Vance Campbell ("Campbell"). *Id.* ¶ 70. Campbell and the Campbell Estate had been in possession of the Drawing since at least 1984. *Id.* ¶ 86. Defendant presented Campbell with a provenance document that identified Manuel De La Torre as the original owner of the Drawing. Dkt. No. 15 ¶ 71; *see* Dkt. No. 1 ¶ 19; Dkt. No. 15 ¶ 19.[1] Campbell indicated that he intended to restitute the Drawing to the De La Torre family, though he later changed position after retaining counsel. Dkt. No. 15 ¶¶ 72–73. On January 25,

---

[1] Defendant also alleges on information and belief that Campbell was already aware as early as 2001 that De La Torre was the true and original owner, having received notice of this fact from Sotheby's. Dkt. No. 15 ¶ 88.

3

2021, Defendant informed Christie's that he was formally demanding that the Drawing be returned within thirty days.  Dkt. No. 1 ¶ 23; Dkt. No. 15 ¶ 23.

On June 14, 2021, Defendant sent a letter to the Estate in which he again asserted his title claim and made a formal, written demand for the return and restitution of the drawing by no later than June 30, 2021.  Dkt. No. 1 ¶ 25; Dkt. No. 15 ¶ 25.  There is no dispute about the authenticity of the letter.  It refers to the demand made by Defendant through Christie's on January 25, 2021, that the Estate return the Drawing, and to a conference between the parties on June 11, 2021.  Dkt. No. 20-3 at 2.  It then states that "Claimants," defined as the Estate of Manuel Jesus De La Torre and its heir Manuel Julio De La Torre, demand that the drawing "be returned and restituted to Claimants on or before June 30, 2021."  *Id.* at 3.[2]

Plaintiff did not return the drawing.  Dkt. No. 15 ¶ 91.  Plaintiff alleges that on June 25, 2021, the Estate responded to Defendant's letter and refused the June 14, 2021, demand.  Dkt. No. 1 ¶ 26.  Defendant does not dispute that he received a letter from Vance Campbell refusing the demand.  Oral Argument Tr. at 19:5–12 ("That is not disputed.  I did receive that via email, me personally, as counsel.").  However, he denies knowledge or information sufficient to form a belief regarding whether the refusal was sent on behalf of the Estate.  Dkt. No. 15 ¶ 26.

---

[2] Defendant argues that this letter should not be considered because it is not incorporated by reference in Defendant's pleading.  Dkt. No. 29 at 4.  However, the letter is specifically referenced in Defendant's pleading and Defendant's counterclaim "stands or falls" based on whether the letter constituted a proper demand.  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *see Rekor Sys., Inc. v. Loughlin*, 2022 WL 3020148, at *11 (S.D.N.Y. July 29, 2022) ("For a claim of conversion, a demand is required when possession of the property was originally lawful."); *Clark v. Hemphill Artworks, LLC*, 2024 WL 1157170, at *12 (S.D.N.Y. Mar. 16, 2024) (noting that demand is a "necessary element" of a claim for conversion of property against a good-faith purchaser).  Therefore, the demand letter is integral to Defendant's counterclaims and is properly considered.

## PROCEDURAL HISTORY

Plaintiff filed his complaint on February 20, 2025. Dkt. No. 1. Plaintiff brought causes of action (1) for declaratory judgment, pursuant to 28 U.S.C. §§ 2201(a) and 2202, that the Estate is the rightful owner of the drawing, and (2) to quiet title, and remove any cloud of title, to the Drawing, pursuant to 28 U.S.C. § 1655.[3]

Defendant answered the complaint on April 3, 2025. Dkt. No. 11. Defendant moved for an extension of time to file an amended answer on April 25, 2025, which was granted by the Court the next day. Dkt. Nos. 14–15. Defendant filed an amended answer on April 29, 2025. Dkt. No. 15. In addition to eight affirmative defenses, Defendant also brought counterclaims for (1) declaratory relief, pursuant to 28 U.S.C. §§ 2201(a) and 2202, that Defendant is the rightful owner of the Drawing, and (2) unjust enrichment because Plaintiff "has been unjustly enriched in that it has possessed, controlled, hid, and failed to return the Artwork to Counterclaim Plaintiff for over forty (40) years and it is against equity and good conscience to permit the Counterclaim Defendant to retain such enrichment for which it did not compensate the De La Torre Family." Dkt. No. 15 ¶ 106.

On May 5, 2025, Plaintiff filed a motion for judgment on the pleadings and a motion to dismiss Defendant's counterclaims, accompanied by a series of exhibits supporting the motion. Dkt. Nos. 18–20. Defendant filed an opposition on June 16, 2025. Dkt. No. 29. Plaintiff filed a reply on June 27, 2025, which was accompanied by four declarations in support. Dkt. Nos. 30–34.

---

[3] The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C § 1332. There is complete diversity of citizenship because Plaintiff is a citizen of Jamaica and Defendant is a citizen of New York. *See* 28 U.S.C § 1332(a)(2). Dkt. No. 1 at ¶¶ 4–5; Dkt. No. 15 at ¶¶ 74–75. The Drawing has an estimated value of $200,000 to $300,000. Dkt. No. 1 ¶ 16; Dkt. No. 15 ¶ 106.

The Court held oral argument on the motion on July 25, 2025. *See* July 25, 2025 Minute Entry.

## LEGAL STANDARD

Generally speaking, "[t]he same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgments on the pleadings." *Southern Telecom Inc. v. ThreeSixty Brands Group, LLC*, 520 F. Supp. 3d. 497, 503 (S.D.N.Y. 2021) (citing *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)). However, while only a defendant may make a Rule 12(b)(6) motion, either a plaintiff or a defendant may move for judgment on the pleadings under Rule 12(c). *See Lively*, 6 F.4th at 305 (citing *TDist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760-61 (D.C. Cir. 2019)). When the plaintiff moves for judgment on the pleadings, the court must accept all factual allegations in the defendant's answer as true and draw all reasonable inferences in favor of the defendant. *Id.* (citing *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941)). If a defendant's answer "admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted. If, however, there are material questions of fact presented by the pleadings, the motion for judgment on the pleadings must be denied." *J.P. Morgan Chase Bank, N.A. v. Tesla, Inc.*, 2024 WL 4167340, at *6 (S.D.N.Y. Sept. 12, 2024) (internal quotations omitted); *see also* 5C Wright & Miller's Federal Practice & Procedure § 1367 (3d ed. 2025) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.").

In evaluating a Rule 12(c) motion, "courts may consider all documents that qualify as part of the non-movant's pleading, including (1) the complaint *or* answer, (2) documents attached to

the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *United Launch All., LLC v. Factory Mut. Ins. Coverage*, 2024 WL 4815675, at *2 (S.D.N.Y. Nov. 18, 2024) (citing *Lively*, 6 F.4th at 306). A document is "integral" to the pleadings when the pleading relies heavily upon its terms and effect. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

A motion to dismiss a counterclaim under Rule 12(b)(6) "is evaluated under the same standard as a motion to dismiss a complaint." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013) (quoting *Revonate Mfg., LLC v. Acer Am Corp.*, 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013)). Although the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the [non-movant's] favor," *Chambers*, 282 F.3d at 152, the Court is not required to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "labels and conclusions," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007). "[T]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense," such that a party must "support [its] defenses with some factual allegations to make them plausible." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019); *see Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4–5 (S.D.N.Y. June 25, 2020).

## DISCUSSION

Plaintiff claims that he is entitled to judgment on the pleadings and that Defendant's counterclaims must be dismissed because, taking the admissions and allegations in Defendant's pleading as true, any claim that Defendant could assert for conversion or replevin of the Drawing is barred by the statute of limitations. Dkt. No. 19. Plaintiff asserts that the statute of limitations

7

for Defendant's competing claim to the Drawing began to run no later than June 30, 2021, when Plaintiff failed to return the Drawing as demanded, and that accordingly the statute of limitations expired no later than June 30, 2024, three years after the demand was not satisfied.  *Id.*

Defendant argues that there are issues of fact regarding how Wallace Campbell acquired the Drawing, how the Drawing transferred to the Campbell Estate after Wallace Campbell's passing, and whether Vincent Campbell had authority to act on behalf of the Campbell Estate. Dkt. No. 29 at 2.  None of these purported issues of fact would affect the running of the statute of limitations here, and Plaintiff's motions must therefore be granted.

"Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).  The statute of limitations in New York for an "action to recover a chattel or damages for the taking or detaining of a chattel" is three years, N.Y. C.L.P.R. 214(3), computed from "the time the cause of action accrued to the time the claim is interposed," N.Y. C.P.L.R. 203(a).  "Under New York law, the statute of limitations for conversion and replevin automatically begins to run against a bad faith possessor on the date of the theft or bad faith acquisition—even if the true owner is unaware the chattel is missing." *Grosz v. Museum of Modern Art*, 772 F. Supp.2d. 473, 481 (S.D.N.Y. 2010). However, "a cause of action for replevin against the *good-faith purchaser* of a stolen chattel accrues when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." *Howard Univ. v. Borders*, 588 F. Supp. 3d 457, 467 (S.D.N.Y. 2022) (quoting *Solomon R. Guggenheim Foundation v. Lubell*, 569 N.E.2d 426, 429 (N.Y. 1991) (emphasis added)). "An innocent purchaser of stolen goods becomes a wrongdoer only *after*

refusing the owner's demand for their return." *Grosz*, 772 F. Supp.2d. at 481–82 (quoting *Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1161 (2d Cir. 1982)).

It is not necessary that the defendant utter the words "refused" or "recite some magic words of rejection" for the cause of action for conversion to accrue and the statute of limitations to begin to run. *Grosz*, 772 F. Supp.2d at 484. The crucial issue is whether "either the recipient's words or actions evidence[] 'an intent to interfere with the demander's possession or use of his property.'" *Id.* (quoting *Feld v. Feld*, 720 N.Y.S.2d 35, 36 (1st Dep't 2001)). Such interference is an "overt and positive act of conversion," and the cause of action accrues even if the words "'I refuse your demand' were not explicitly used." *Id.* (quoting *Borumand v. Assar*, 2005 WL 741786, at *14 (W.D.N.Y. Mar. 31, 2005)).

For example, in *Grosz v. Museum of Modern Art*, the managing director of an artist's estate demanded that the Museum of Modern Art ("MoMA") return three paintings to the estate, arguing that the paintings were wrongfully taken from the artist during his lifetime, in November 2003. *See* 772 F. Supp.2d. at 481. A year and a half later, after discussion with representatives of the estate, counsel for the MoMA wrote a letter rejecting the estate's assertion that it had an immediate right to possession of the works, expressing the position that the MOMA had clear title, and stating that the estate was not entitled to the return of the works "at this time." *Id.* at 485–86. The court held that "plaintiffs' claims accrued, and the limitations period began to run" on the date of the letter. *Id.* at 486. Notwithstanding counsel's invitation to meet with the plaintiffs to review the facts and potentially share ownership and MoMA's willingness to withdraw its ownership claims if new or conclusive evidence came to light, the refusal to comply with the demand for immediate return itself reflected "an intent to interfere with the demander's possession or use of his property,"

9

which was an "overt and positive act of conversion." *Id.* at 484 (internal citations and quotations omitted).

Similarly, in *Feld v. Feld*, plaintiff left multiple personal items, including art and antiques, at his parents' house as he was moving out. *See* 720 N.Y.S.2d 35, 36 (1st Dep't 2001). "By letters from plaintiff to his parents in 1971 and 1974 he asserted ownership to these items and directed their return through an intermediary. In response to his 1974 letter, plaintiff's father conditioned any discussion or return of that property on the resolution of unrelated claims made by plaintiff's parents against plaintiff and his antiques firm." *Id.* Communication ceased between plaintiff and his parents; his parents died in 1995. *Id.* The court held that plaintiff's causes of action for replevin, conversion, and fraud accrued by 1974. *Id.* at 37. Plaintiff's 1971 and 1974 letters constituted a demand because they conveyed the assertion that he was the "owner of the property and that the one upon whom the demand [wa]s made ha[d] no rights in it other than allowed by the demander." *Id.* at 37. Notwithstanding that plaintiff's father's letter held out the possibility of further discussions, it constituted a refusal because the father's conditions were "inconsistent with plaintiff's claim of ownership." *Id.*; *see also Swain v. Brown*, 24 N.Y.S.3d 598, 599 (1st Dep't 2016) ("Delaine conditioned the turnover of Artwork on payment of storage fees and a release of claims, which constituted a refusal."). No magic words were necessary.

In *Borumand v. Assar*, the plaintiff demanded that her brother-in-law deliver to her shares of stock that he had purchased with her money, but he "never in fact turned over the shares." *See* 2005 WL 741786, at *14 (W.D.N.Y. Mar. 31, 2005). The court held that the cause of action for conversion accrued within a year after her demand, even though the defendant never stated the refusal in words. The failure to deliver the shares in response to the demand itself "amount[ed] to

10

'an overt and positive act of conversion.'" *Id.* (quoting *Heffernan v. Marine-Midland Bank, N.A.*, 727 N.Y.S.2d 60, 61 (1st Dept. 2001)).

These cases make clear that Defendant's claim for return of the Drawing accrued when Defendant demanded Plaintiff return the Drawing by June 30, 2021, and Plaintiff did not do so. Defendant admits to sending a letter to Plaintiff on June 14, 2021, demanding the return and restitution of the drawing by June 30, 2021. Dkt. No. 1 ¶ 25; Dkt. No. 15 ¶ 25, 70. Plaintiff failed to return the drawing by June 30, 2021. *See* Dkt. No. 15 ¶¶ 81–106. It was at that point, at the latest, that Plaintiff ceased to be in rightful possession of the Drawing and began interfering with Defendant's possession. One party may hold or use property without realizing it belongs to another, but if the owner appears and requests the property, refusing to turn it over constitutes a denial of the owner's claim. *See Borumand*, 2005 WL 741786, at *14; *Feld*, 720 N.Y.S.2d at 36–37. "[D]enial of access to the rightful owner or assertion to the owner of a claim on the goods" is conversion. *State v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 711 (N.Y. 2002). Crediting Defendant's allegations and admissions, Defendant could have brought a claim for conversion or replevin on July 1, 2021. Defendant did not assert such a claim until he filed his answer and counterclaims in this litigation on April 29, 2025, more than three years after the cause of action accrued. Dkt. No. 15. Therefore, any claim that Defendant could bring to recover the Drawing is barred by the statute of limitations.

It is not necessary to this holding for the Court to consider the June 25, 2021, letter in which Plaintiff refused Defendant's demand. *See* Dkt. No. 20-4; Dkt. No. 29 at 4. Even if no letter had been sent, Plaintiff's failure to return the Drawing to Defendant evidenced "an intent to interfere with the possession or use" of the Drawing. *Grosz*, 772 F.Supp.2d at 484 (citing *Feld*, 720 N.Y.S.2d at 37). Plaintiff's "continued retention of the work[] after [Defendant's demand letter]

11

was sent . . . indicates its continuing intent to interfere with the rights asserted by [Defendant] in [its] demand." *Id.* at 486. It is not tenable to hold that when Plaintiff failed to return the Drawing on the deadline set by Defendant, Defendant still could not have brought a claim for conversion or replevin. If an explicit refusal were required, a party could avoid a tort claim indefinitely simply by holding on to the disputed item without explicitly refusing to return it. It would transform a cause of action for interference with property into a cause of action for "acknowledged" or "admitted" interference with property. But clearly a party may interfere with another's property simply by failing to return it, without explicitly acknowledging that it refuses to do so. In such instance, as here, the owner of the property must have the right to bring a tort claim.

Though the June 25, 2021, refusal letter is not necessary to the Court's holding, Defendant admitted at oral argument that the refusal letter was received. Oral Argument Tr. at 19:5–12.[4] This admission further supports the conclusion that Defendant's cause of action accrued by July 1, 2021. Defendant admits that he presented a provenance document to Vance Campbell, that Vance Campbell indicated he intended to restitute the Drawing, and that Defendant demanded the return of the work from Vance Campbell and the Campbell Estate. Dkt. No. 15 ¶¶ 70–72. He then admits that, after making the demand of Campbell, he received a letter from Campbell refusing to turn over the Drawing. Defendant denies that the letter was understood as a refusal on behalf of the Estate, as opposed to Vance Campbell in his individual capacity. But that after-the-fact

---

[4] Defendant's answer states that he "lacks sufficient knowledge or information upon which to form a belief" as to whether the Estate responded and refused Defendants' demand "based on Plaintiff's communications with Defendant prior to June 25, 2021 where Plaintiff said it intended to return the Artwork to Defendant." Dkt. No. 15 ¶ 26. Based on Defendant's representations at oral argument, the force of this denial seems to be that Defendant admits to receiving the letter but denies knowledge of whether the letter constituted the *Estate* responding and refusing the demand, as opposed to Campbell individually responding and refusing the demand, because the Estate refusing would be inconsistent with prior statements that the Estate intended to return the Drawing.

contention is entirely inconsistent with Defendant's prior actions repeatedly addressing Vance Campbell as the representative of the Estate and thus the relevant decision-maker.  In any case, it is irrelevant whether Vance Campbell had the authority to speak on behalf of the Campbell Estate.[5] The critical point is that the Drawing was not returned by June 30, 2021, and that as of July 1, 2021, Plaintiff enjoyed possession of the Drawing to which he was not entitled.  The admission that Defendant received the refusal letter only strengthens the conclusion that Defendant's demand was refused by July 1, 2021.

The running of the statute of limitations is decisive of both Plaintiff's claims and Defendant's counterclaims.  Plaintiff seeks quiet title and a declaration that the "Estate has clear and marketable title to the Drawing, free of any claim for conversion, replevin, or restitution by the De La Torre Heirs."  Dkt. No. 1 ¶ 33.  Because the statute of limitations for an "action to recover a chattel or damages for the taking or detaining of a chattel" has expired, Defendant cannot recover the Drawing and Plaintiff is entitled to a judgment removing the cloud on his title resulting from Defendant's claim.  N.Y. C.L.P.R. 214(3); *see Howard Univ.*, 2022 WL 11817721, at *21 (granting declaratory judgment and quiet title to resolve the ownership of artwork); *Museum of Mod. Art v. Schoeps*, 549 F. Supp. 2d 543, 547–48 (S.D.N.Y. 2008) (holding that declaratory judgment is an appropriate remedy for holder of artwork to resolve a challenge to ownership).  Defendant's counterclaims are for a declaratory judgment that he is the true owner of the work and for unjust enrichment based on Plaintiff's failure to return the work. Dkt. No. 15.  But if the statute of limitations has expired, Defendant may not properly assert a

---

[5] The Court may also take judicial notice of the certified grant of probate from the Supreme Court of Judicature of Jamaica, which recognizes Vance Campbell as executor of the Estate. Dkt. No. 31-1; *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts.").

claim "to recover a chattel or damages for the taking or detaining of a chattel," N.Y. C.L.P.R. 214(3), whether labeled as conversion, replevin, unjust enrichment, or declaratory judgment, *see Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 660 N.E.2d 1121, 1123 (N.Y. 1995) (stating that in a declaratory judgment action "[c]ourts must look to the underlying claim and the 'nature of the relief sought' to determine the applicable period of limitation"); *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016) ("[I]n ascertaining the governing statute of limitations, courts look beyond the form and to the substance of the sought-after remedy."); *Swain v. Brown*, 24 N.Y.S.3d 598, 601–02 (1st Dep't 2016) (applying N.Y. C.L.P.R. 214(3) to unjust enrichment claim based on conversion of artwork). Because Defendant's counterclaims seek in substance the return of the Drawing or damages for its detention, they are time-barred.[6]

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is GRANTED. Plaintiff's motion to dismiss Defendant's counterclaims is GRANTED.

---

[6] When a party asserts a claim that appears on its face to be time-barred, the court may dismiss it on statute of limitations grounds on a Rule 12(b)(6) motion. *See Ellul v. Congregation of Christian Brothers.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citation omitted); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). In that instance, the burden is on the non-movant to "plausibly alleg[e] that they fall within an exception to the applicable statute of limitations." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (collecting cases); *see also Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021), *aff'd*, 2022 WL 211702 (2d Cir. Jan. 25, 2022). Defendant does not plausibly allege any such exception. Although Defendant suggests that his counterclaims are tolled by New York's executive orders related to COVID-19, these executive orders are facially inapplicable to claims accruing in June or July of 2021. *See Murphy v. Harris*, 177 N.Y.S.3d 559, 561 (2d Dep't 2022) (noting that the executive orders expired on November 3, 2020). Defendant does not allege facts that would support any other basis for tolling.

The Clerk of Court is respectfully directed to close Dkt. No. 18 and to close this case.

SO ORDERED.

Dated: August 8, 2025
      New York, New York

                                         LEWIS J. LIMAN
                                   United States District Judge